UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
RONALD GRASSEL,

                  Plaintiff,

          - against -

DEPARTMENT OF EDUCATION OF THE
CITY OF NEW YORK,

                 Defendant.
--------------------------------------------------------X

**<u>MEMORANDUM & OPINION</u>**

Case No. 12 CV 1016 (PKC)

PAMELA K. CHEN, United States District Judge:

      Plaintiff Ronald Grassel, acting *pro se*, alleges that his employer, the Department of Education of the City of New York ("DOE"), violated the Americans with Disability Act and the New York State Human Rights Law following a medical exam where he was found unfit to return to work pending further medical clearance. Specifically, Grassel alleges that the DOE subjected him to an impermissible disability-related medical examination and/or medical inquiries, discriminated against him on the basis of a perceived disability, and retaliated against him for filing a charge with the U.S. Equal Employment Opportunity Commission ("EEOC").

      The DOE moves for summary judgment on Grassel's claims. For the reasons set forth the below, the Court denies summary judgment to the DOE on Grassel's impermissible disability-related examination and/or inquiry claim, and grants summary judgment to the DOE on all other claims alleged in the Complaint.

## I.    BACKGROUND

### A.    Facts

The following facts are taken from the DOE's Local Rule 56.1 submission, which includes Grassel's August 16, 2013 deposition. (*See* Dkt. 38–1, Deposition of Ronald Grassel, 8/16/2013 ("Grassel Dep.").) Grassel objects to the DOE's reliance on his deposition, arguing that it should be excluded because the DOE never completed the deposition and therefore did not afford him an opportunity for cross-examination. (Dkt. 35, Plaintiff's Local Rule 56.1 Opposition ("Pl. 56.1 Opp.") at ECF 1.)[1] However, the Court finds Grassel's objection unfounded based on Magistrate Judge Scanlon's prior order on this issue, and thus considers the deposition in deciding the DOE's motion. (*See* Order dated 6/27/2014.)[2]

Grassel began working for the DOE as a teacher on February 2, 1970. (Dkt. 37–1, Defendant's Local Rule 56.1 Statement ("Def. 56.1"), ¶ 2.)[3] He served as a tenured social studies teacher at Harry Van Arsdale High School in Brooklyn, New York. (Dkt. 38–4, Hearing Officer's Opinion and Award ("Hearing Op."), dated May 14, 2012, at ECF 3.)

The instant case stems from a long history of proceedings between Grassel and the DOE. The Court recounts the events preceding this case only to provide context to the current dispute. On February 4, 1998, the DOE suspended Grassel, without pay, for failure to comply with the

---

[1]    Citations to "ECF" refer to the pagination generated by the Court's electronic docketing system and not the document's internal pagination.

[2]    The Court notes, however, that the copy of Grassel's deposition submitted by the DOE appears to be incomplete as it is missing page 139. However, this omission is not material to the Court's determination.

[3]    Unless otherwise noted, a standalone citation to a 56.1 Statement denotes that this Court has deemed the underlying factual allegation undisputed. Any citations to a party's 56.1 Statement incorporates by reference the documents cited therein. Where relevant, however, the Court may cite directly to underlying the documents.

DOE's directives to appear for a medical examination. (*Id*. at ECF 5.) On March 4, 1998, the DOE commenced an administrative proceeding seeking Grassel's termination. (*Id*.) The specifications against him asserted that he was "unfit to teach, engaged in insubordination and lack[ed] concern about students." (*Id*.)

While the DOE's termination proceeding against Grassel was still pending, Grassel challenged his suspension in an Article 78 proceeding in the Supreme Court of New York, Kings County. (*Id*.) The court dismissed his petition for failure to state a cause of action, and its decision was affirmed by the Appellate Division in *Grassel v. Board of Education*, 301 A.D. 2d 498 (N.Y. App. Div. 2003). (*Id*. at ECF 6.) Grassel thus remained suspended from teaching.

On April 4, 2005, an arbitration panel rendered a decision in Grassel's termination proceeding, establishing a portion of the charges and determining that Grassel's suspension through the date of the award was an appropriate sanction. (*Id*. at ECF 6.) The arbitration panel also found that Grassel had the potential to return to the classroom, but noted Grassel's refusal in 1998 to submit to a medical examination, and stated in a proviso that the medical examination issue should be resolved before Grassel's return to teaching. (*Id*.)

On April 21, 2005, Grassel challenged the medical examination proviso through an Article 75 proceeding, and succeeded in having it stricken from the arbitration award. (*Id*.) Nonetheless, two years later, on May 11, 2007, the DOE ordered Grassel to submit to a medical examination to be held on June 29, 2007. (*Id*.) Grassel did not appear. (*Id*. at ECF 7.) The DOE brought new charges of insubordination against Grassel, and on August 17, 2009, the Hearing Officer ordered that Grassel be dismissed unless he scheduled a medical examination by September 30, 2009 and attended it by October 30, 2009. (*Id*.) When he did not do so, the DOE terminated Grassel. (*Id*.)

Grassel challenged the August 17, 2009 order in State court, which resulted in the Supreme Court of New York, New York County vacating his termination. (*Id.*) In 2010, when he had not been reinstated to his prior position, Grassel moved to hold the DOE in contempt. (*Id.*) The DOE opposed the motion, arguing that it had the right to continue Grassel's suspension for failure to submit to a medical examination. (*Id.*) On December 2, 2010, New York Supreme Court Judge Anil C. Singh ordered the DOE to "issue a report pursuant to § 2568 of the Education Law seeking a medical examination of [Grassel]." (Dkt. 38–2, Order, *Grassel v. Department of Education*, Index No. 105552/2005 (Dec. 2, 2010)). The DOE accordingly ordered Grassel to report for a medical examination on January 18, 2011. (Def. 56.1, ¶ 12.)

*January 18, 2011 Examination*. Grassel reported for his examination on January 18, 2011. As part of the examination, Grassel was given a form to complete that he alleges was discriminatory. (Grassel Dep. at ECF 190:21–22).[4] The form asks the following questions:

- Have you ever had an operation on any of the following [organ or body part]? If so please indicate DATE.

- What Personal Injuries OR Accidents have you had?

- Have you ever been hospitalized?

- What medication are you currently taking?

- Have you ever consulted a psychiatrist, psychologist or psychoanalyst?

- Indicate the date of absences from duty for illnesses during the past [1] year and the causes of these absences.

- Family history: Is there any history in your family of epilepsy, mental disorders, diabetes, or high blood pressure?

- Do you have a military disability? What is the % of the disability?

---

[4] It is not clear from the record on summary judgment that Grassel completed this form; Grassel includes only a blank form in his Complaint. (*Id.* at ECF 192:15–18; Compl. at ECF 14.)

(Compl. at ECF 14.)  (emphasis in original)

Dr. Ann Garner, a School Medical Inspector employed by the DOE, conducted Grassel's examination.  (Def. 56.1, ¶ 7.)  The examination consisted of Dr. Garner asking Grassel several questions.  (Grassel Dep. at ECF 192:5–8.)  Dr. Garner's notes indicate that Grassel told her that he had suffered a retinal detachment and tear in his left eye and his vision was poor.  (Def. 56.1, ¶ 14; Compl. at ECF 69–70.)  Though Dr. Garner found Grassel psychologically fit, she deemed him "not fit" to return to work pending further medical clearance, citing his self-reported vision problems.  (Def. 56.1, ¶ 16; Compl. at ECF 71.)  Dr. Garner requested documentation from Grassel's treating ophthalmologist regarding his diagnosis, treatment and prognosis regarding his left eye.  (Hearing Op. at ECF 9.)

Grassel submitted the requested documentation, which stated that he had undergone surgery on 8/11/2010 to repair a retinal detachment in his left eye.  (*Id*. at ECF 10.)  Grassel's treating ophthalmologist also stated that his visual acuity was 20/20 in the right eye with correction and "20/150 (pinhole 20/100) in the left eye."  (*Id*.)  Based on this documentation, Dr. Garner scheduled a follow-up medical exam for Grassel that would include a vision exam.  (*Id*.)

The DOE directed Grassel to report for a scheduled medical examination[5] on February 9, 2011.  (Def. 56.1, ¶ 18.)  Grassel did not appear.  (*Id*. at ¶ 19.)  The DOE ordered a subsequent exam on February 18, 2011, for which Grassel also did not appear.  (*Id*. at ¶¶ 18–19.) [6]  Grassel sent a letter to the DOE on March 2, 2011 requesting an independent medical evaluation and objecting to a follow-up vision exam as being outside the scope of the exam that took place on January 11, 2011.  (Hearing Op. at ECF 11.)  The DOE ordered a third exam on March 18, 2011,

---

[5]     The DOE characterized the examination as a vision examination, but Grassel disputes this characterization.  (Def. 56.1, ¶ 18; Pl. 56.1 Opp. at ECF 3.)

[6]     Grassel maintained that he was out of state during February 2011 and therefore did not receive the letters regarding his rescheduled exam.  (*See* Hearing Op. at ECF 11.)

but Grassel did not attend that exam either.  (Def. 56.1, ¶¶ 18–19.)  The notice regarding the March 18, 2011 exam indicated that it would be Grassel's final opportunity to submit to the exam.  (Hearing Op. at ECF 11.)

Based on Grassel's failure to appear for the February and March 2011 exams, DOE brought disciplinary charges against Grassel under New York Education Law § 3020-a.  (Def. 56.1, ¶ 20.)  The DOE alleged that Grassel's failure to appear for the follow-up medical exam constituted insubordination and just cause for termination.  (Hearing Op. at ECF 4.)  The matter was presented to an arbitrator over the course of 12 non-consecutive days of hearings between August 2011 and February 2012.  (*Id.* at ECF 3.)

On May 24, 2012, the arbitrator issued his opinion, ultimately concluding that Grassel's failure to report for the follow-up medical exam constituted insubordination and that he should be suspended without pay.  (*Id.* at ECF 18–19, 22, 23–24.)  Because Grassel had already been suspended without pay beginning in 1998, the arbitrator determined that the entire period of his suspension would represent the full duration and satisfaction of his penalty.  (*Id.* at ECF 23–25.)  The arbitrator ordered Grassel to be reinstated within 30 days of the opinion.  (*Id.* at ECF 25)  The DOE did so.  (Grassel Dep. at ECF 179:4–7.)

On June 14, 2012, Grassel moved to vacate the arbitrator's opinion and award against him, seeking a return to active status as a teacher retroactive to 1997.  (Def. 56.1, ¶ 24.)  The Supreme Court of New York, New York County, issued a decision upholding the Opinion and Award in the DOE's disciplinary proceeding against Grassel.  *See In the Matter of the Application of Ronald Grassel*, 2012 N.Y. Misc. LEXIS 5829 (N.Y. Sup. Ct. Dec. 15, 2012).  The Appellate Division, First Department, subsequently upheld the lower court's decision.  *See In re Ronald Grassel*, 983 N.Y.S.2d 724 (N.Y. App. Div. 2014).

## B.    Procedural History

On March 23, 2011, shortly after his examination with Dr. Garner and his failure to appear for the follow-up examination, Grassel filed a discrimination claim with the EEOC.  (Def. 56.1, ¶ 4.)  He received a Right to Sue letter from the EEOC on December 2, 2011.  (Def. 56.1, ¶ 5.)  Grassel, proceeding *pro se*, timely commenced this action on March 1, 2012.  (Def. 56.1, ¶ 6.)  His complaint sought "such relief as may be appropriate, including injunctive orders, damages costs and attorney's fees."  (Compl. at ECF 2.)  The DOE moved for summary judgment on October 20, 2014.  (Dkt. 37.)

As a preliminary matter, it appears that the DOE failed to comply with Local Civil Rule 56.2, which requires a represented party moving for summary judgment against a *pro se* party "to serve and file as a separate document together with the papers in support of the motion" a "'Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment' with the full texts of Fed. R. Civ. P. 56 and Local Civil Rule 56.1 attached."  Local Civ. R. 56.2.  The electronic docket for this case does not indicate that the DOE served or filed such a notice on Grassel.  The Second Circuit has previously determined that a movant's failure to provide the *pro se* party with notice of the requirements of Rule 56 of the Federal Rules of Civil Procedure "will result in vacatur of the summary judgment, no matter how meritorious, unless the movant shows (or it is obvious to the court) that the *pro se* was aware of this rule's requirements."  *Irby v. New York City Transit Auth.*, 262 F.3d 412, 413 (2d Cir. 2001).

Though the Court admonishes the DOE for its failure to comply with Local Civil Rule 56.2, it ultimately finds the DOE's error harmless.  It is obvious to the Court from Grassel's opposition that he understands the nature and consequences of summary judgment.  (*See* Dkt. 34 at ECF 1 (stating "Plaintiff will identify the potential determinative facts and factual disputes that

Plaintiff contents [*sic*] demonstrate a dispute of fact precluding summary judgment"); Dkt. 35 at ECF 2–4 (Plaintiff's 56.1 opposition statement, stating that "all of the above facts are in dispute"); Dkt. 36 at ECF 6 (requesting the Court deny the motion for summary judgment and order a trial).) Therefore, the Court excuses the DOE's failure to comply with Local Civil Rule 56.2 because Plaintiff, despite acting *pro se*, is clearly aware of Rule 56's requirements, and no purpose would be served by requiring the DOE to re-serve its summary judgment motion accompanied by a Local Civil Rule 56.2 notice. *See Venable v. Reed Elsevier*, No. 04 CV 3532, 2009 WL 2516844, at *2 (S.D.N.Y. Aug. 18, 2009) (finding the defendant's delay in giving a 56.2 Notice harmless because Plaintiff demonstrated that she "was aware of her obligations in facing defendant's motion for summary judgment and aware of all possible consequences stemming from that motion").)

## II.     STANDARD OF REVIEW

"Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law." *Harvis Trien & Beck, P.C. v. Fed. Home Loan Mortgage Corp. (In re Blackwood Assocs., L.P.)*, 153 F.3d 61, 67 (2d Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

"The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *McLee*, 109 F.3d at 134.

The Court's inquiry upon summary judgment is "determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250; *see also id.* at 251–52 ("In essence, though, the inquiry . . . [is] whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."). The substantive law will determine which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

## III. DISCUSSION

The Court construes Grassel's Complaint to allege the following claims: (1) the DOE violated the Americans with Disabilities Act ("ADA") by subjecting him to an impermissible disability-related medical examination or inquiry on January 18, 2011; (2) the DOE discriminated against Grassel based on a perceived disability in violation of the ADA and New York State Human Rights Law ("NYSHRL") when it found him unfit to return to work pending further medical clearance based on a perceived disability; and (3) the DOE retaliated against Grassel in violation of the ADA and NYSHRL. The Court first addresses Grassel's ADA claims and then proceeds to his NYSHRL claims. Finally, the Court addresses the Grassel's potential claims under 42 U.S.C. §§ 1981, 1983 or 1985(3).

### A. ADA Claims

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A disability, for the purposes of the ADA, is a "physical

or mental impairment that substantially limits a major life activity." 42 U.S.C. § 12102(1). A qualified individual "means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

The Court construes Grassel's Complaint as alleging three claims under the ADA. Grassel alleges that the DOE subjected him to an impermissible disability-related medical examination and/or inquiry during his January 18, 2011 examination by Dr. Garner. (Compl. at ECF 3; Dkt. 36, Plaintiff's Opposition Memo ("Pl. Opp.") at ECF 4; Grassel Dep. at ECF 190:19–191:8.) Grassel also alleges that Dr. Garner's determination that he was "not fit" to return to work pending further medical clearance constituted discrimination based on a perceived disability and retaliation for his filing of a complaint with the EEOC. (Compl. at ECF 2, 5, 7, 16.)[7]

### 1. Impermissible Disability-Related Examination and/or Inquiry

Section 12112(d)(4)(A) of the ADA prohibits a covered entity from "requir[ing] a medical examination" or making "inquiries of an employee as to whether such employee is an individual with a disability . . . unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). Grassel has standing to bring a claim against the DOE under this ADA provision. As Grassel's employer, the DOE is a "covered entity" within this section of the ADA. *See* 42 U.S.C. § 12111(2) (defining "covered entity" to include employers). Furthermore, the Second Circuit has ruled that, when suing under this provision, a plaintiff "need not prove that he or she has a disability unknown to his or her

---

[7]     The Court does not construe Grassel's Complaint as alleging a "failure to accommodate" claim. Indeed, Grassel's opposition states that he "never stated he had a disability nor did he ever ask for a[n] accommodation." (Pl. Opp. at ECF 4).

employer in order to challenge a medical inquiry or examination[.]" *Conroy v. New York State Dep't of Corr. Servs.*, 333 F.3d 88, 94 (2d Cir. 2003). Thus, Grassel may bring a claim under Section 12112(d)(4)(A) without proving that he had a disability unknown to the DOE.

The DOE moves for summary judgment on Grassel's impermissible examination and inquiry claim by arguing that issue preclusion bars Grassel from asserting such a claim. (Def. Memo at ECF 8–9; Def. Reply at ECF 6–7). To successfully invoke collateral estoppel, the DOE must show that: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Ayyad-Ramallo v. Marine Terrace Associates LLC*, No. 13 CV 7038, 2014 WL 2993448, at *7 (E.D.N.Y. July 2, 2014) (citing *Proctor v. LeClaire*, 715 F.3d 402, 414 (2d Cir. 2013) (citing *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006))).

The Court finds that issue preclusion does not apply here. In claiming issue preclusion, DOE invokes the New York Supreme Court's December 24, 2012 decision upholding the administrative determination against Grassel. According to DOE, the New York Supreme Court has already determined that "the Vision Exam ordered by the DOE was job-related and permissible pursuant to N.Y. Educ. Law § 2568." (Def. Reply at ECF 6.) However, the New York Supreme Court's determination of this issue pertains only to the follow-up exam ordered by the DOE, not Dr. Garner's examination of Grassel on January 18, 2011. *See In the Matter of Ronald Grassel*, 2012 N.Y. Misc. LEXIS 5829, at * 5–6 (N.Y. Sup. Ct. Dec. 24, 2012) (noting that the charges against Grassel were for failure to report for scheduled medical examinations in 2011 and finding that it was justifiable to require an employee to submit to a medical examination). Grassel's impermissible examination or inquiry claim concerns Dr. Garner's

January 18, 2011 exam, not the follow-up exam ordered by the DOE that Grassel never attended.[8]

Furthermore, in rendering its December 24, 2012 decision, the New York Supreme Court did not decide the issue of whether Dr. Garner's examination of Grassel and the inquiries she made of him were "job-related and consistent with business necessity," as would be relevant to Grassel's claim under Section 12112(d)(4)(A) of the ADA. The decision only discussed the issue of whether the vision exam ordered by Dr. Garner could fall within the scope of N.Y. Educ. Law § 2568; at most, the court determined that vision *could be* a job-related trait for teachers. *In the Matter of Ronald Grassel*, 2012 N.Y. Misc. LEXIS 5829 at *6 ("It is possible that lack of eyesight, or diminished vision could impact the ability to perform certain duties as a teacher.") However, for the DOE to successfully invoke issue preclusion, it would have to demonstrate that the New York Supreme Court determined that vision *is* a job-related trait that is *also* consistent with the DOE's business necessity. *See* 42 U.S.C. § 12112(d)(4)(A). The State court decision, however, does not discuss business necessity anywhere. The DOE thus cannot meet its burden to show that an "identical issue was raised in a previous proceeding" and "was actually litigated and decided in the previous proceeding." *Ayyad-Ramallo*, 2014 WL 2993448, at *7. Accordingly, issue preclusion does not apply.

---

[8]     Indeed, Grassel's deposition testimony makes this clear:

Q: So what were the discriminatory act [*sic*] that occurred on January 18, 2011?
A: Okay. I was given a form to fill out that was discriminatory. Then an investigation was conducted where the conclusion was discriminatory, that is to say, not fit. It was discriminatory based upon some visual acuity issue. *And the questions asked during the inquiry* were disability related and therefore illegal . . . There was no business necessity for making inquiries into my supposed disability.

(Grassel Dep. at ECF 190:19–191:8 (emphasis added).)

To prevail on summary judgment, then, the DOE must show that there is no genuine dispute of material fact as to whether its January 18, 2011 examination of Grassel was "job-related and consistent with business necessity" under the ADA. *See Transp. Workers Union of Am., Local 100, AFL-CIO v. New York City Transit Auth.*, 341 F. Supp. 2d 432, 446 (S.D.N.Y. 2004) (noting that the employer has the burden of proof). To establish that its examination and/or inquiries did not run afoul of the ADA, an employer must make a two-part showing. *Id.* First, the employer must show that the asserted business necessity is "vital to the business." *Conroy*, 333 F.3d at 97. The employer makes this showing of necessity "on the facts of the particular case," rather than simply relying "on reasons that have been found valid in other cases." *Transp. Workers*, 341 F. Supp. 2d at 446 (citing *Conroy*, 333 F.3d at 101). Second, the examination or inquiry at issue must "genuinely serve[] the asserted business necessity" and must not be "no broader or more intrusive than necessary." *Conroy*, 333 F.3d at 98.

The DOE's motion papers make no attempt to assert that Grassel's January 18, 2011 exam by Dr. Garner, the inquiries she made during the exam, or the form that she instructed Grassel to complete sought information from Grassel that was "job-related and consistent with business necessity." Indeed, the DOE does not make any argument as to business necessity or whether the measures taken by the DOE with respect to Grassel's January 18, 2011 medical exam genuinely served such necessity. (*See* Pl. Opp. at ECF 6).

Furthermore, while the exact questions that Dr. Garner posed to Grassel are not clear from the record on summary judgment, a reasonable jury could find that the general queries posed on the DOE's form were "broader or more intrusive than necessary", and thus violated the ADA. (*See* Compl. at ECF 14 (including questions such as "Have you *ever* consulted a psychiatrist, psychologist or psychoanalyst," "What medication re you currently taking," and

"Have you *ever* had an operation on [Eyes]?") (emphasis added)).  Such general queries are akin to those that were barred in *Conroy* because of their potential for eliciting information that "may tend to reveal a disability."  *Conroy*, 333 F.3d at 95 (noting that the State's request for information on general diagnoses "may give rise to the perception of a disability", which could result in discrimination).

Because a reasonable jury could find that the DOE failed to meet its burden to show that the January 28, 2011 exam, Dr. Garner's inquiries during the exam, and the DOE's form all sought information that was "job-related and consistent with business necessity," the Court denies summary judgment to the DOE on Grassel's impermissible disability-related exam and/or inquiry claim.  This claim shall proceed to trial.

### 2.    Discrimination Based Upon Perceived Disability

Grassel claims that the DOE discriminated against him based on a perceived disability when Dr. Garner found him unfit to return to work pending further medical clearance.  (Compl. at ECF 2, 5, 7.)  The Court evaluates Grassel's ADA discrimination claim under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S 792, 802–05 (1973).  *Cortes v. MTA New York City Transit*, --- F.3d ---, 2015 WL 5166342, at *4 (2d Cir. Sept. 4, 2015) (citing *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (further case citations omitted).  Under *McDonnell Douglas*, the plaintiff must first establish a *prima facie* case of discrimination.  *Id*.  If the plaintiff does so, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions.  *Id*.  If the employer does so, the burden shifts back to the plaintiff to prove that the employer's stated reason is pretext.  *Id*.  Though the evidentiary burden shifts back and forth, the ultimate burden of persuasion rests with the plaintiff.  *See id*.

Grassel asserts a "regarded as" claim for discrimination, meaning that he claims the DOE regarded him as having a disability within the meaning of the ADA. *See* 42 U.S.C. § 12102(1)(C) (defining disability as including individuals "regarded as having" a physical or mental impairment that substantially limits one or more major life activities of such individual); *id*. at § 12102(3) (defining "regarded as having such an impairment"). Thus, to establish a *prima facie* case of discrimination under the ADA, Grassel must prove that (1) the DOE is covered by the ADA; (2) the DOE regarded him as suffering from a disability within the meaning of the ADA; (3) Grassel was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) Grassel suffered an adverse employment action because of his perceived disability. *See Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005); *Howell v. New Haven Bd. of Educ.*, 309 F. Supp. 2d 286, 290–91 (D. Conn. 2004) (citing *Giordano v. City of New York,* 274 F.3d 740, 747 (2d Cir. 2001)).

Here, the Court finds that Grassel is unable to establish his *prima facie* case for ADA discrimination because he cannot show that he suffered an adverse employment action. At the time of his January 18, 2011 medical exam, Grassel was suspended without pay, due to his failure to submit to a medical examination in 2009. (Hearing Op. at ECF 7; Grassel Dep. at ECF 179:4–7.) Thus, Dr. Garner's determination that he could not return to work pending further medical clearance was a continuation of the status quo. It did not cause Grassel to lose pay or otherwise constitute a materially adverse change in the terms and conditions of his employment. *See Sherman v. Cty. of Suffolk*, 71 F. Supp. 3d 332, 344 (E.D.N.Y. 2014) (defining an adverse employment action sufficient for a *prima facie case* to constitute a "'materially adverse change' in the terms and conditions of employment") (citing *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)); *cf. Pinero v. Long Island State Veterans Home*, 375 F. Supp. 2d

162, 168 (E.D.N.Y. 2005) (dismissing action for lack of an adverse employment action where the action at issue "kept the status quo in place"). Furthermore, Dr. Garner's request for further medical documentation does not qualify as an adverse employment action because the request, in and of itself, did not alter the terms of Grassel's employment. *See Gentile v. Potter*, 509 F. Supp. 2d 221, 240–41 (E.D.N.Y. 2007) ("Requiring an employee to provide medical documentation is not a materially adverse action."); *Reckard v. Cty. of Westchester*. 351 F. Supp. 2d 157, 161 (S.D.N.Y. 2004) (finding the requirement that the plaintiff provide updated medical documentation regarding her condition was not an adverse employment action). Grassel is therefore unable to establish that he suffered an adverse employment action.[9]

The Court thus grants summary judgment to DOE on Grassel's claim for discrimination based on a perceived disability.

### 3. Retaliation

---

[9] Although the Court need not reach this issue, the Court also finds that Grassel has failed to proffer sufficient evidence to permit a trier of fact to conclude that the DOE regarded him as disabled within the meaning of the ADA. Dr. Garner's notes indicate that Grassel reported that he had a retinal detachment and tear in his left eye that was still healing, and for which he was awaiting surgery. (Compl. at ECF 69.) She therefore ordered him to submit further documentation from his treating ophthalmologist. (*Id*. at ECF 71.)

Such evidence does not establish that the DOE perceived Grassel's vision issues as a physical impairment that limited a major life activity, so as to constitute a disability under the ADA. *See* 42 U.S.C. § 12102(3)(A). Despite Dr. Garner's use of the phrase "not fit", her conclusion that Grassel should not return to work was premised on the need for more information and further review, *i.e.*, Grassel submitting further medical documentation and receiving subsequent clearance from the DOE. Such a determination evinces a belief that (1) no finding of a physical impairment for purposes of the ADA could be made without the requested additional documentation, and/or (2) Grassel's condition was temporary. Regarding the latter, the ADA is clear that an individual with a temporary impairment is not regarded as having a disability. *See* 42 U.S.C. § 12102(3)(B) (providing that an individual is not regarded as having a disability where the individual has an impairment that is "transitory or minor" and stating a "transitory impairment is an impairment with an actual or expected duration of 6 months or less.") Indeed, Grassel's Complaint admits that Dr. Garner believed he was "medically intact and was capable of going back to work." (Compl. at ECF 5.)

Although Grassel's complaint alleges that the DOE retaliated against him (Compl. at ECF 2, 16), Grassel's opposition papers do not address the DOE's argument on his ADA retaliation claim. When a party opposing summary judgment fails to respond to the moving party's argument on a claim, the Court may deem the claim abandoned. *See DeMoss v. Norwalk Bd. of Educ.*, 21 F. Supp. 3d 154, 172 (D. Conn. 2014) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."); *Wendy Hong Wu v. Dunkin' Donuts, Inc.*, 105 F. Supp. 2d 83, 96 (E.D.N.Y. 2000) (taking the plaintiffs' failure to respond to defendant's argument on a claim as a suggestion that the plaintiffs intend to abandon the claim), *aff'd sub nom.*, *Wu v. Dunkin' Donuts, Inc.*, 4 F. App'x 82 (2d Cir. 2001). Here, because Grassel is proceeding *pro se*, the Court considers the merits of Grassel's ADA retaliation claim, in case he did not knowingly abandon it.

Like his ADA discrimination claim, Grassel's ADA retaliation claim is subject to the *McDonnell Douglas* burden-shifting framework. *Sista*, 445 F.3d at 169. To establish a *prima facie* case of retaliation under the ADA, Grassel must show that (1) he engaged in an activity protected by the ADA; (2) the DOE was aware of this activity; (3) the DOE took an adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity. *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). Grassel alleges that the DOE retaliated against him by finding him "not fit" to return to work based on his January 28, 2011 exam by Dr. Garner.[10] (Compl. at ECF 16.) Thus, to successfully

---

[10]     Grassel's Complaint alleges that the DOE retaliated against him by terminating him on January 19, 2011 (Compl. at ECF 16), but Grassel was not terminated on that date. (Hearing Op. at ECF 9). Rather, it was only after Grassel refused to participate in the follow-up medical exam that the DOE commenced a proceeding to seek his termination. (Def. 56.1, ¶ 20.) Thus, the

establish a *prima facie* case of ADA retaliation, Grassel must establish that this alleged "adverse action" was caused by Grassel's pursuit of a "protected activity," such as the filing of an EEOC charge.

Here, Grassel cannot establish a causal connection between the alleged adverse action against him, *i.e.*, Dr. Garner's "not fit" finding, and a protected activity, *i.e.*, his filing of a complaint at the EEOC. Dr. Garner found Grassel "not fit" on January 18, 2011. Grassel filed his EEOC complaint on January 25, 2011. (*See* Compl. at ECF 72 (Grassel's completed EEOC Intake Questionnaire)). Because he filed his complaint *after* Dr. Garner's "not fit" finding, the complaint could not have been the basis for the DOE's alleged retaliation. Therefore, Grassel cannot establish the causal connection element of his *prima facie* case. *See Palummo v. St. Vincent's Med. Ctr.*, 4 F. App'x 99, 102 (2d Cir. 2001) (noting the plaintiff's ADA retaliation claim could only arise after she filed an EEOC charge).

Accordingly, because Grassel cannot establish a causal connection between the alleged adverse action and his filing of an EEOC complaint, his ADA retaliation claim fails. The Court grants summary judgment to the DOE on this claim

## B.    New York State Human Rights Law (NYSHRL) Claims

Grassel's Complaint alleges disability-related claims under New York law, which the Court construes to mean discrimination and retaliation claims under the NYSHRL. (Compl. at ECF 1.) The NYSHRL protects individuals with disabilities from discrimination and retaliation on account of their disabilities, and extends this protection to individuals who have a condition "regarded by others" as a disability. *See* N.Y. Exec. Law §§ 292 (21), 296(1)(a). In contrast to

---

Court construes the adverse action against Grassel as Dr. Garner's finding that he was not fit to return to work without further medical clearance.

the ADA, the NYSHRL has a more expansive definition of disability. *Treglia*, 313 F.3d at 723

(citing *New York Division of Human Rights v. Xerox Corp.,* 65 N.Y.2d 213, 218–19 (1985)).  It

defines a disability as "a physical, mental or medical impairment resulting from anatomical,

physiological, genetic or neurological conditions which prevents the exercise of a normal bodily

function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques."

N.Y. Exec. Law §§ 292 (21)(a).

The DOE argues that Grassel's NYSHRL claims must be dismissed because his

complaint fails to allege that he filed a notice of claim in compliance with New York Education

Law § 3813.  (Def. Memo at ECF 4–5).  Grassel argues, incorrectly, that this action is not subject

to the requirements of Education Law § 3813.  The Court finds that compliance with that

provision is necessary because Grassel seeks to vindicate a private right of interest, *i.e.*, his own,

against the DOE.  *See Thomas v. New York City Dept. of Educ.*, 938 F. Supp. 2d 334, 360

(E.D.N.Y. 2013) ("'[D]istrict courts in this Circuit have consistently held that the notice

requirement of § 3813(1) applies to NYSHRL discrimination claims unless those claims seek to

vindicate a public interest.'" (quoting *Gray v. City of New York*, No. 10 CV 3039, 2012 WL

947802 at *16 (E.D.N.Y. Mar. 2012)).  Indeed, Grassel's NYSHRL discrimination and

retaliation claims concern actions he alleges that the DOE took against him.  Thus, Grassel's

state claims are subject to Education Law § 3813.

Education Law § 3813 sets forth a number of requirements before an individual may sue

a school district in New York State.  A plaintiff must specifically allege in his complaint, or in a

motion, "that a written verified claim upon which such action . . . is founded was presented to the

governing body of [the school district] within three months after the accrual of such claim, and

that the officer or body having the power to adjust or pay said claim has neglected or refused to

make an adjustment or payment thereof for thirty days after such presentment." N.Y. Educ. Law § 3813(1); *see also Thomas*, 938 F. Supp. 2d at 360 (explaining the requirements of Education Law § 3813). A plaintiff's failure to do so requires dismissal of the State law discrimination claims pled under the NYSHRL. *Id.*; *see also Brtalik v. South Huntington Union Free Sch. Dist.*, No. 10 CV 0010, 2010 WL 3958430, at *5 (E.D.N.Y. Oct. 6, 2010).

There is no dispute that Grassel's Complaint fails to allege compliance with Education Law § 3813. However, Grassel's Complaint does note his filing of an EEOC charge. (*See, e.g.*, Compl. at ECF 2.) Courts in this district have opined that allegations regarding an EEOC charge may, under some circumstances, satisfy Education Law § 3813; however, the allegations must still meet Section 3813's specific requirements, including the requirement that the charge be served on the proper "governing body" of a school within three months after the accrual of a claim. *Thomas*, 938 F. Supp. 2d at 360; *Brtalik*, 2010 WL 3958430, at *5.

Grassel's Complaint does not plead that his EEOC charge was served on the DOE's governing body or that it was served within three months of his January 18, 2011 exam by Dr. Garner. Thus, Grassel's NYSHRL claims must be dismissed for failure to comply with Education Law § 3813. *See Thomas*, 938 F. Supp. 2d at 360–61 (dismissing NYSHRL claims because allegations in the complaint concerning the plaintiff's EEOC charge did not satisfy Education Law § 3813); *Curcio v. Roosevelt Union Free School Dist.*, No. 10 CV 5612, 2012 WL 3646935, at *20 (E.D.N.Y. Aug. 22, 2012) (finding the plaintiff's EEOC complaint did not function as a notice of claim satisfying Education Law § 3813 where complaint was only mailed to the Human Resources Director).

Even if the Court found that Grassel's EEOC charge satisfied Education Law § 3813's notice of claim provision, the Court would nonetheless find that Grassel's NYSHRL claims fail

on their merits. Aside from the expanded definition of disability under State law, Grassel's NYSHRL claims are subject to the same analysis as his ADA claims. *See Treglia*, 313 F.3d at 719 (noting the NYSHRL is governed by the same standards as the ADA with respect to retaliation claims); *Bernadotte v. New York Hosp. Med. Ctr. of Queens,* No. 13 CV 965, 2014 WL 808013, at *6 (E.D.N.Y. Feb. 28, 2014) (noting the *McDonnell Douglas* burden shifting test applied to the plaintiff's ADA and NYSHRL disability discrimination claims); *Sclafani v. PC Richard & Son*, 668 F. Supp. 2d 423, 440 n.10 (E.D.N.Y. 2009) (noting the legal standards for discrimination claims under the ADA and the NYSHRL are essentially the same). Having found that Grassel's ADA discrimination and retaliation claims fail, Grassel's NYSHRL claims would fail as well.

### C.    Section 1981, Section 1983 and Section 1985

Grassel's Complaint asserts that jurisdiction may also be appropriate under 42 U.S.C. §§ 1981, 1983 and 1985(3) (Compl. at ECF 1), which the DOE takes as indication of Grassel's intent to allege claims under those provisions. The Court, however, does not construe the Complaint to allege such claims because, as the DOE points out, Grassel does not make any factual allegations that could support claims under those provisions. (*See* Def. Memo at ECF 11–12.) Grassel does not allege facts pertaining to racial discrimination under Section 1981 or that two or more persons conspired to deprive him of a constitutional right under Section 1985(3). To the extent the Complaint can be construed to assert a deprivation of civil rights under Section 1983, the Court finds such a claim to claim to be duplicative of Grassel's ADA discrimination claims, therefore requiring their dismissal. *See Patterson v. Cty. of Oneida,* 375 F.3d 206, 225 (2d Cir. 2004) ("A § 1983 action may not, however, be brought to vindicate rights conferred only by a statute that contains its own structure for private enforcement, such as Title

VII."); *EC ex rel. RC v. Cty. of Suffolk*, 882 F. Supp. 2d 323, 355 (E.D.N.Y. 2012) (finding plaintiffs' ADA claim could not be brought pursuant to Section 1983 because the ADA has its own right of enforcement), *aff'd sub nom. E.C. ex rel. R.C. v. Cty. of Suffolk*, 514 F. App'x 28 (2d Cir. 2013); *Brown v. Research Found. of SUNY,* No. 08 CV 592, 2009 WL 1504745, at *10 (N.D.N.Y. May 28, 2009) ("Because Title VII, the ADA, and the ADEA contain their own structure for private enforcement, Plaintiff may not bring a § 1983 claim premised upon the substantive rights provided by these statutes.").

The Court thus grants summary judgment to the DOE regarding any claims in the Complaint pursuant to 42 U.S.C. §§ 1981, 1983 and 1985(3).

## IV.     CONCLUSION

For the reasons set forth above, the Court GRANTS summary judgment to Defendant on Plaintiff's ADA and NYSHRL claims of discrimination based on a perceived disability, Plaintiff's ADA and NYSHRL claims of retaliation, and Plaintiff's Section 1981, 1983, and 1985(3) claims.    The Court DENIES summary judgment to Defendant on Plaintiff's impermissible medical examination or inquiry claim under the ADA.  That claim will proceed to trial.  The parties shall file a joint pre-trial order that complies with this Court's Individual Rules within ninety (90) days of the date of this Memorandum & Opinion.

SO ORDERED.


*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge


Dated:          September 24, 2015
                Brooklyn, New York